UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:13-CR-00154-TBR

UNITED STATES OF AMERICA                                              Plaintiff

v.

ERIC M. THOMAS                                                        Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Eric Thomas's Motion to Suppress. (Docket No. 18.) Defendant filed his initial Memorandum in support of his Motion on February 5, 2014. (Docket No. 22.) On March 20, 2014, the Court held a suppression hearing in Louisville, Kentucky. (Docket No. 26.) The transcript of that hearing appears in the record at Docket No. 36. During the suppression hearing, the United States presented evidence through the testimony of Taylorsville Police Chief Toby Lewis and Campbellsville Police Detective Travis Begley. The United States thereafter filed its Response to Defendant's Motion on June 9, 2014. (Docket No. 35.) Pursuant to the Court's Order of May 8, 2014, any reply by Defendant was due no later than June 16, 2014. (*See* Docket No. 33.) Defendant has filed no reply, and the time to do so has passed. This matter now is ripe for adjudication. For the reasons that follow, Defendant's Motion to Suppress will be DENIED.

BACKGROUND

On July 12, 2013, Taylorsville Police Chief Toby Lewis stopped Defendant Eric Thomas in Taylorsville, Kentucky, for failure to wear his seat belt. Upon approaching the vehicle, Chief Lewis smelled marijuana and observed plant starter trays in the

backseat of Thomas's vehicle.[1] When Chief Lewis inquired about the marijuana smell, Thomas produced a small marijuana cigarette from his right shorts pocket. Chief Lewis then asked Thomas to step out of the vehicle and took the marijuana cigarette from him. After stepping out of the vehicle, Thomas produced a marijuana bud from his left shorts pocket. Chief Lewis then radioed for backup, and Officer Daniel Wills arrived at the stop moments later.

Chief Lewis then advised Thomas of his *Miranda* rights. Chief Lewis asked for, and Thomas gave, consent to search his vehicle.[2] A search of Thomas's vehicle revealed some fifteen bags of potting soil, sticks to prop up plants, fertilizer, and a grow-light bulb.[3] Chief Lewis issued Thomas a citation for failure to wear a seat belt and possession of marijuana and then released him.

Chief Lewis thereafter contacted the Marion County Sheriff's Office and the Kentucky State Police to relay his findings from the traffic stop. Detective Travis Begley received information later that day from Detective Byron Richardson, who relayed to Detective Begley that Officer Alan Corbett had received several past complaints about Thomas engaging in an indoor marijuana growing operation. Detective Begley is employed by the Campbellsville Police Department and is assigned to the Kentucky State Police Drug Task Force. Detective Begley had driven past Thomas's property and observed a large sheet metal fence that obstructed the view of

---

[1] A photograph of the plant starter trays in Thomas's backseat was introduced as Government Exhibit 1 at the suppression hearing.

[2] Audio recordings of the exchange between Chief Lewis and Thomas were introduced as Government Exhibit 2 at the suppression hearing. Chief Lewis's testimony regarding the stop and Thomas's giving consent to search the vehicle is corroborated by these audio recordings.

[3] A photograph of the trunk of Thomas's vehicle was introduced as Government Exhibit 3 at the suppression hearing.

that property.  Detective Begley also was aware that Thomas kept guard dogs at the property.  Detective Begley spoke to Chief Lewis later that day via telephone. Detective Begley then called the Commonwealth Attorney's office in Campbellsville to request a subpoena for the electrical records for Thomas's property.[4]

Detective Begley served the subpoena on Inter County Energy employees and received the requested records.  Inter County Energy employees told Detective Begley that Thomas and a young female typically paid cash for Thomas's electrical charges and would often pay more than the charges listed on his bills.  Detective Begley also learned that Inter County Energy employees thought Thomas's electrical bills appeared high.

On the basis of the information gathered, Detective Begley sought a search warrant for Thomas's property.  After finding probable cause, a Marion County District Judge issued a search warrant for Thomas's property.[5]  Detective Begley executed the search warrant that same day and seized, among other things, two garbage bags of marijuana, a box of unprocessed marijuana, several zip-lock bags of processed marijuana, growing equipment, listening devices, surveillance equipment, and digital scales.  Police also seized roughly 800 marijuana plants.

DISCUSSION

Thomas moves to suppress all evidence gathered as a result of the search of his vehicle, residence, and person, as well as evidence of his utility records.  Thomas argues that this evidence was unlawfully obtained because (1) the search of his vehicle was not

---

[4] A copy of the subpoena duces tecum was introduced as Government Exhibit 4 at the suppression hearing.

[5] A copy of the search warrant and Detective Begley's affidavit in support thereof were introduced as Government Exhibit 5 at the suppression hearing.

incident to a lawful arrest and was without his consent, and (2) the search warrant for his property was invalid insofar as it was obtained using evidence from the illegal traffic stop and based on an improper grand jury subpoena.

**I.     The Traffic Stop and Search of Thomas's Vehicle Both Were Lawful.**

Chief Lewis had probable cause for the initial traffic stop of Thomas's vehicle. Kentucky law prohibits an individual from operating a motor vehicle on public roadways unless the driver is wearing a properly fastened seat belt. *See* Ky. Rev. Stat. § 189.125(6). An officer has probable cause to stop a vehicle when he observes a driver violate a traffic law. *See Whren v. United States*, 517 U.S. 806, 810 (1996). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993); *see also United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (holding that no Fourth Amendment violation occurred where officers had probable cause to stop driver for failure to wear a seat belt). Chief Lewis had probable cause to stop Thomas when he observed Thomas driving without a seat belt in violation of Kentucky law. Therefore, because the initial traffic stop was made with probable cause, no Fourth Amendment violation occurred.

It is clear from the evidence presented at the suppression hearing that Chief Lewis also had probable cause to search Thomas's vehicle. Chief Lewis smelled marijuana and, upon questioning Thomas about that smell, Thomas produced a marijuana cigarette followed by a marijuana bud. Chief Lewis also observed plant starter trays in plain view in the backseat of Thomas's car. Therefore, Chief Lewis had

probable cause to believe that Thomas's vehicle contained contraband. *See, e.g.*, *Carroll v. United States*, 267 U.S. 132, 149 (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief . . . known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."); *United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005) ("After the stop, [the officer] smelled and saw in open view the marijuana in the seat. Therefore, there was probable cause to search the car at that point."); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) ("[W]hen the officers detected the smell of marijuana coming from [the defendant's] vehicle, this provided them with probable cause to search the vehicle without a search warrant.").

But regardless whether Chief Lewis had probable cause, Thomas consented to the search. Chief Lewis testified unequivocally that Thomas consented to the search of his vehicle. That testimony is corroborated by the audio recordings of the exchange between Chief Lewis and Thomas. There is nothing to indicate that Thomas's consent was anything other than knowing, intelligent, and voluntary. Thus, even assuming Chief Lewis lacked probable cause, he nonetheless had Thomas's consent to search the vehicle.

Accordingly, the Court finds no constitutional defect in either the initial stop or subsequent search of Thomas's vehicle that would warrant suppression.

**II.     Thomas Lacks Standing to Challenge the Validity of the Subpoena.**

Thomas next challenges the grand jury subpoena issued to Inter County Energy as illegally obtained. Thomas, however, lacks standing to challenge the validity of this third-party subpoena. In *United States v. Miller*, the Supreme Court wrote:

> This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

425 U.S. 435, 443 (1976) (citations omitted). The *Miller* Court further recognized "the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time . . . the subpoena is issued." *Id.* at 444. Thus, a defendant may challenge the validity of a third-party subpoena only if he demonstrates a reasonable expectation of privacy in the contents of the documents subpoenaed. *See id.* at 442. Absent such a showing, a defendant lacks standing to challenge the subpoena, even if it is invalid. *See id.* at 442 n.2 ("We see no reason why the existence of a Fourth Amendment interest turns on whether the subpoena is defective. Therefore, we do not limit our consideration to the situation in which there is an alleged defect in the subpoena . . . .").

In *Miller*, the Supreme Court denied standing to challenge a third-party subpoena to individuals who asserted a constitutionally protected privacy interest in their bank records. *Id.* at 440-47. In *Smith v. Maryland*, the Court extended the same reasoning to telephone records. 442 U.S. 735, 744 (1979) ("When he used his phone,

[the defendant] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, [he] assumed the risk that the company would reveal to police the numbers he dialed."). The same rationale has since been applied where a defendant sought to assert a privacy interest in his electricity bills. *See United States v. McIntyre*, 646 F.3d 1107, 1111-12 (8th Cir. 2011) ("[W]hen [the defendant] used power in his home, he voluntarily conveyed that information to [the utility company]. As a result, he had no reasonable expectation of privacy in his power records."), *cert. denied*, 132 S. Ct. 1614 (2012); *accord United States v. Suing*, 2011 WL 4711985, at *6 (D. Neb. Sept. 30, 2011) (finding that the defendant had no reasonable expectation of privacy in records held by his internet service provider). The logical conclusion from these cases is that, in the context of third-party subpoenas, there is no Fourth Amendment protection against the compulsory production of public records by third parties.

Accordingly, the Court concludes that Thomas lacks standing to challenge the subpoena issued to Inter County Energy because he has failed to demonstrate (or even allege) that he possesses a legitimate expectation of privacy in the information contained in his electrical bills.[6] When Thomas used electricity at his home, he voluntarily conveyed information concerning his electrical usage to Inter County Energy. Based on Detective Begley's discussion with Inter County Energy's employees, it is clear that those employees had ready access to Thomas's electrical bills.

---

[6] The Court notes that the Memorandum in support of Thomas's Motion does not address the issue whether he had an expectation of privacy in his electrical records; instead, Thomas focuses his argument on the validity of the subpoena itself. (*See* Docket No. 22.) The Court also notes that Thomas had the opportunity to respond to the United States' argument in this regard, (*see* Docket Nos. 30; 33), but did not file a reply to the United States' Response. As such, the Court concludes that Thomas has waived any argument regarding whether he had standing to challenge the subpoena issued to Inter County Energy.

It also is clear that Thomas knew those employees had access to his information. As such, Thomas's electrical bills were as much public records as the bank records in *Miller* or the phone records in *Smith*, and, therefore, do not merit protection against compulsory production by third parties. This conclusion would be unaffected if, as Thomas argues, the subpoena itself were defective. *See United States v. Phibbs*, 999 F.2d 1053, 1077-78 (6th Cir. 1993) (explaining that the court's decision to deny the defendant standing for lack of a legitimate privacy interest in credit card statements and phone records "would not have been different if the government had infringed upon the constitutional rights of those entities subpoenaed. One generally does not have standing to complain about the breach of another's rights."); *see also Miller*, 425 U.S. at 442 n.2. Thus, while Inter County Energy might have had standing in the case of a defective subpoena, Thomas certainly does not.

## CONCLUSION

Therefore, having considered Thomas's Motion, and being otherwise sufficiently advised;

IT IS HEREBY ORDERED that Defendant Eric Thomas's Motion to Suppress, (Docket No. 18), is DENIED.

IT IS SO ORDERED.

Date:

cc: AUSA
      Counsel for Defendant